UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| RAYMOND M. RENÉ, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | 1:05-cv-0763-JDT-WTL |
| ) | |
| THE TRUSTEES OF INDIANA ) | |
| UNIVERSITY and JOHN C. STEINMETZ, ) | |
| ) | |
| Defendants. ) | |

**ENTRY ON MOTION FOR JUDGMENT ON THE PLEADINGS (Docket No. 15)**

**AND MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (Docket No. 21)**[1]

Plaintiff Raymond M. René brings this action against his former employer, Defendant The Trustees of Indiana University (the "University"), and his former supervisor at the University, Defendant John C. Steinmetz. Dr. René asserts six federal and state causes of action, contending that the Defendants discriminated against him as the result of him exercising his free speech rights, and on the basis of his age. On August 23, 2005, the Defendants moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c), arguing that Dr. René failed to state a claim upon which relief can be granted. In support their motion, the Defendants point to deficiencies in each of Dr. René's six claims. Dr. René responded to the motion on October 14, 2005, and at the same time filed a motion for leave to file an amended

---

[1] This Entry is a matter of public record and will be made available on the court's web site. However, the discussion contained herein is not sufficiently novel to justify commercial publication.

complaint. The Defendants replied in support of their motion for judgment on the pleadings and simultaneously responded to the motion for leave to amend on November 15, 2005. Dr. René replied in support of his motion for leave on November 28, 2005. Therefore, all pending motions are fully briefed and ripe for determination.

**I.    PLAINTIFF'S ALLEGATIONS**

The following are Dr. René's allegations as derived from his nine-page Complaint for Damages and Demand for Jury Trial.

As many in this district may well know, the University is a "public institution of higher education offering associate, baccalaureate, masters and doctoral degrees in a number of fields." (Compl. ¶ 6.) The University employed Dr. René as a non-tenure track geoscientist with its research-affiliated Indiana Geological Survey ("IGS"). (*Id.* ¶¶ 1, 8.) While employed with the IGS, Dr. René admittedly spoke out "openly and critically" on matters of public concern related to its functioning and management. (*Id.* ¶ 11.)

Dr. René alleges that on April 2, 2004, Dr. Steinmetz informed him that his position was being eliminated because of "'budget stress'" and a "'substantial shortfall.'" (*Id.* ¶ 9.) Dr. Steinmetz was the Director of the IGS (*id.* ¶ 7), and also Dr. René's supervisor (*Id.* ¶ 9). At that time, Dr. René was fifty-nine years old. (*Id.* ¶ 10.)

After Dr. Steinmetz informed Dr. René about the termination, but before his employment with the University ended, Dr. René contacted the University's Affirmative

2

Action office to challenge his termination.  (*Id.* ¶ 16.)  Dr. Steinmetz allegedly retaliated against Dr. René for taking this action by "publically accus[ing Dr. René] of improperly storing explosives in his laboratory and of deceiving Defendant Steinmetz about the alleged explosives."  (*Id.*)  The University officially terminated Dr. René's employment on June 30, 2004.  (*Id.* ¶ 1.)

Dr. René filed a charge of age discrimination with the Equal Employment Opportunity Commission ("EEOC") on or about September 14, 2004 (*id.* ¶ 20), and his case proceeded through the administrative review process.  He received a Right to Sue letter several months later (*id.*), and filed his complaint with this court on May 23, 2005.  In it, he asserts the following six claims: First Amendment retaliation against Dr. Steinmetz individually, equal protection violations against Dr. Steinmetz individually, substantive due process violations against Dr. Steinmetz individually, defamation against Dr. Steinmetz individually, age discrimination in violation of the Age Discrimination in Employment Act of 1967 ("ADEA"), specifically 29 U.S.C. § 623(a)(1), against the University, and age discrimination retaliation in violation of § 623(d) of the ADEA, also against the University.  Dr. René seeks compensatory and punitive damages, costs and attorneys' fees, as well as "other and further legal and equitable relief as th[e] Court may deem appropriate."  (*Id.* ¶ 7.)

## II.     MOTION FOR JUDGMENT ON THE PLEADINGS

The Defendants seek judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c) on all six of Dr. René's claims.  They present separate arguments

3

in support of dismissal of each claim, and thus the court also will address each disputed claim separately.

### A. Standard of Review

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is subject to the same standard as a motion to dismiss for failure to state a claim upon which relief can be granted under Rule 12(b)(6). *Thomason v. Nachtrieb*, 888 F.2d 1202, 1204 (7th Cir. 1989). Thus, a Rule 12(c) motion should not be granted unless it appears beyond doubt that the plaintiff cannot prove any facts that would entitle him or her to relief. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957); *Thomason*, 888 F.2d at 1204. When considering such a motion, the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the plaintiff. *Cole v. U.S. Capital*, 389 F.3d 719, 724 (7th Cir. 2004); *Hentosh v. Herman M. Finch Univ. of Health Scis./The Chi. Med. Sch.*, 167 F.3d 1170, 1173 (7th Cir. 1999). Dismissal is appropriate only if "'it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.'" *Ledford v. Sullivan*, 105 F.3d 354, 356 (7th Cir. 1997) (quoting *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).

### B. First Amendment Retaliation Against Dr. Steinmetz in His Individual Capacity

Dr. René first charges Dr. Steimetz individually with violating his First Amendment right to freedom of speech. Specifically, he contends that Dr. Steinmetz

retaliated against him for speaking out on matters of concern to the IGS. The Defendants move for judgment on the pleadings on this claim, asserting that it fails to state a claim upon which relief can be granted because Dr. René offers "pure legal conclusions without alleging any operative facts giving notice of the basis for th[e] claim." (Mot. J. Pleadings 4.)

Since the filing of the Defendants' motion, Dr. René has sought leave to amend his complaint to add factual allegations related to his First Amendment retaliation claim. In his proposed amended complaint, he offers much more detailed allegations regarding the protected speech that provided the motivation for the Defedants' termination of his employment. This includes fourteen topics upon which Dr. René spoke that he believes led to his termination. Those topics also explained in greater detail in Sections Seven through Eighteen of Dr. René's 180-page Grievance Presented to the Indiana University Bloomington Faculty Board of Review Against Dr. Steinmetz (among others), which is attached to his proposed amended complaint as Exhibit A.

The Defendants recognize that the proposed amended complaint adequately states the elements of and factual basis for Dr. René's First Amendment retaliation claim. In their reply in support of their motion for judgment on the pleadings they state, "Because René's proposed Amended Complaint adds alleged facts to his First Amendment claim against Dr. Steinmetz sufficient to provide notice of the purported basis for that claim, Dr. Steinmetz would not oppose the filing of an Amended Complaint limited to that claim." (Reply Supp. Mot. J. Pleadings 2.) Based on this admission, and

contingent on the court's granting leave to amend the complaint, Dr. René's First Amendment retaliation claim will stand.

### C.  Equal Protection Against Dr. Steinmetz in His Individual Capacity

In response to the Defendant's motion for judgment on the pleadings, Dr. René agrees to withdraw his equal protection claim against Dr. Steinmetz individually. Therefore, the court need not consider it any further and it will be dismissed.

### D.  Due Process Against Dr. Steinmetz in His Individual Capacity

In his due process claim against Dr. Steinmetz individually, Dr. René generally alleges that Dr. Steinmetz deprived him of his due process rights by carrying out the unlawful termination of his employment with the University. More specifically, Dr. René contends that his termination constituted "an arbitrary and unjustifiable abuse of government authority, engaged in with the intent of harming, punishing and oppressing [him]." (Compl. ¶ 25.) Dr. René's proposed amended complaint contains the additional allegation that Dr. Steinmetz's "publication of defamatory statements injurious to Plaintiff's personal and professional reputation deprived Plaintiff of a liberty interest." (Proposed Am. Compl. ¶ 23.)

The Defendants seek dismissal of the due process claim, asserting that Dr. René has failed to allege any cognizable liberty interest at stake, or that Dr. Steinmetz's acts were arbitrary, both of which are required to make out such a claim. With regard to Dr. René's original complaint, the Defendants assert that failure to renew the appointment

of a current employee, where there is no legitimate claim of entitlement to be renewed (as appears to have been the situation here), does not violate a liberty interest under *Koch v. Stanard*, 962 F.2d 605, 606 (7th Cir. 1992).  And with regard to the additional defamation allegations Dr. René sets forth in his proposed amended complaint, the Defendants argue that defamatory statements not incident to a termination are not actionable under *Koch.*

Dr. René appears to concede that as a non-tenure track employee he has no liberty interest in his continued employment with the University, and he is correct in that. *See, e.g., Hampton v. Mow Sun Wong,* 426 U.S. 88, 120 (1976) ("There is no general 'liberty' interest in either acquiring federal employment or, in the absence of a statutory tenure, in retaining it, so that the person who is denied employment or who is discharged may insist upon a due process hearing.")  As a result, he seeks leave to add the additional allegation that Dr. Steinmetz's "publication of defamatory statements [was] injurious to Plaintiff's personal and professional reputation."  (Proposed Am. Compl. ¶ 23.)

A person does not have a protectable liberty or property interest in his or her reputation, *see Paul v. Davis*, 424 U.S. 693, 701, 711-12 (1976), and mere defamation by the government does not deprive a person of liberty, even when it causes "serious impairment of [one's] future employment."  *Siegert v. Gilley*, 500 U.S. 226, 234 (1991); *see also Paul*, 424 U.S. at 697.  Rather, it is the "alteration of legal status" that, "combined with the injury resulting from the defamation, justifies the invocation of procedural safeguards."  *Paul*, 424 U.S. at 708-09, 710.  Thus, in order to assert a due

7

process claim related to defamation, the defamation must "relate to and be uttered incident to the employment termination, not after the fact." *Siegert*, 500 U.S. at 233-34.

The Defendants contend that any defamatory statements Dr. Steinmetz may have made did not relate to or were not uttered incident to the termination of Dr. René's employment, as *Siegert* requires. This may well be true. But at this stage of the proceedings, the court cannot weigh the evidence, and must accept the plaintiff's, and not the defendant's, assertions as true. *Head v. Chi. Sch. Reform Bd. of Trustees*, 225 F.3d 794, 801 n.7 (7th Cir. 2000) (in finding that a complaint stated a claim for a due process violation arising from defamation in the government employment context, the Seventh Circuit stated: "under the applicable standard of review . . . we are required to give [the] complaint a generous reading"). And in his amended complaint, Dr. René alleges the following:

> After learning of his **impending** termination, Plaintiff contacted legal counsel and the University's Affirmative Action office in an effort to challenge the termination. When Defendant learned of Plaintiff's actions, and learned that Plaintiff had alleged that he was being terminated because of his age and because of his speech on matters of public concern, Defendant Steinmetz retaliated against Plaintiff. Among other actions, Defendant Steinmetz publicly accused Plaintiff of improperly storing explosives in his laboratory and of deceiving Defendant Steinmetz about the alleged explosives. Defendant Steinmetz' accusations were false and defamatory.

(Proposed Am. Compl. ¶ 16 (emphasis added).) He also alleges that "The conduct of Defendant Steinmetz constituted an arbitrary and unjustifiable abuse of government

8

authority, engaged in with the intent of harming, punishing and oppressing Plaintiff.  (*Id.* ¶ 24.)

These allegations, although somewhat vague, state that Dr. Steinmetz arbitrarily made false and defamatory statements in connection with Dr. René's impending termination—not after it had occurred.  And even so, the allegations also imply that the arbitrary defamation may have foreclosed Dr. René's "freedom to take advantage of other employment opportunities," *Paul*, 424 U.S. at 710 (quoting *Bd. of Regents v. Roth*, 408 U.S. 564, 573 (1972)), all that is necessary to state a due process violation resulting from defamation in the employment context.  Finally, the allegations are adequate to put Dr. Steinmetz on notice as to the gravamen of the alleged due process liberty interest and the arbitrary behavior   As such, assuming the court allows Dr. René to file his proposed amended complaint, Dr. René's due process claim survives the motion for judgment on the pleadings and will not be dismissed.

### E. Defamation Against Dr. Steinmetz in His Individual Capacity

Dr. René also charges Dr. Steinmetz individually with a state law claim for defamation, relying in large part on Dr. Steinmetz's alleged statements that Dr. René improperly kept explosives in his laboratory.  Dr. René contends that Dr. Steinmetz's publication of these statements was unprivileged, or in the alternative, malicious and an abuse of privilege.  In response, the Defendants move to dismiss the claim, arguing that it cannot proceed under the Indiana Tort Claims Act ("ITCA"), Ind. Code § 34-13-3-5.  They point out that a reference in the complaint suggests that Dr. René may seek to

hold the University liable for Dr. Steinmetz's actions. That reference reads: "The actions taken by Defendant Steinmetz . . . including but not limited to Defendant Steinmetz' false and defamatory statements about explosives in the Plaintiff's laboratory, constituted unlawful retaliation prohibited by 29 U.S.C. § 623(d) for which the University, as Plaintiff's employer, is liable." (Compl. ¶ 33.) According to the Defendants, because under the ITCA an employee of a governmental entity may not be held individually liable for his or her actions if they were carried out within the scope of employment, and because Dr. René's complaint implicates the University with respect to Dr. Steinmetz's alleged defamatory statements, the claim has no legal basis. They also assert that in order to bring a claim for defamation under the ITCA, a plaintiff must affirmatively allege that the defamation was carried out outside the scope of employment, which was not done here.

The ITCA prohibits individual claims against governmental employees as follows, in relevant part:

> (a) A member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity may not be named as a party in a civil suit that concerns the acts taken by a board, a committee, a commission, an authority, or another instrumentality of a governmental entity where the member was acting within the scope of the member's employment. For the purposes of this subsection, a member of a board, a committee, a commission, an authority, or another instrumentality of a governmental entity is acting within the scope of the member's employment when the member acts as a member of the board, committee, commission, authority, or other instrumentality.

10

Ind. Code § 34-23-3-5(b).  Under this statutory guidance, if Dr. René seeks to hold the University liable for Dr. Steinmetz's alleged defamatory statements as made within the scope of his employment, then the ITCA would preclude such a claim.  Nothing in the ITCA, however, requires that a plaintiff allege specifically that the defamation occurred outside the scope of employment.  *See Miner v. Sw. Sch. Corp.*, 755 N.E.2d 1110, 1114-15 (Ind. Ct. App. 2001).  A plaintiff may also allege that the defamatory statement was criminal, malicious, willful and wanton or calculated to benefit the employee making the statement personally.  *Id.*

Dr. René's complaint alleges that Dr. Steinmetz maliciously made false and defamatory statements about Dr. René.  (Compl. ¶¶ 17, 19, 28.)   However, it in no way alleges that Dr. Steinmetz was acting in the scope of his employment in making those statements (or out of the scope of his employment, for that matter).  The defamation claim is brought against Dr. Steinmetz "in His Individual Capacity."  (*Id.* 5.)   And the text of the defamation claim does not mention scope of employment at all.  The court understands that in one reference in the complaint Dr. René appears to state that the University should be held liable for Dr. Steinmetz's alleged defamatory statements.  However, upon closer examination, it appears that the statement has been taken out of context.  The statement is set out under the claim heading: "Count V: Age Discrimination in Employment (Against the Trustees of Indiana University)."  (*Id.* 6.)   This heading clearly demonstrates that Dr. René makes the statement with regard to his ADEA age discrimination claim, not his defamation claim.  Indeed, no such statement is

made under the heading of "Defamation (Against Dr. Steinmetz in His Individual Capacity." (*Id.* 5.)

Should the evidence at a later date demonstrate that Dr. Steinmetz was indeed acting within the scope of his employment when making the alleged defamatory statements, that issue may be brought up on summary judgment. *See Jungels v. State Univ. Coll.,* 922 F. Supp. 779, 786 (W.D.N.Y. 1996) (in a professor's age discrimination suit against a university, the individual defendants successfully argued that claims under Title VII of the Civil Rights Act of 1964 should be dismissed because they, as the university's agents, could not be held personally liable under Title VII). However, at this stage of the proceedings, the court does not believe that Dr. René has pled himself out of a claim for defamation against Dr. Steinmetz.

### F. Discrimination and Retaliation in Violation of the Age Discrimination in Employment Act of 1967 Against the Trustees of Indiana University

In the only two claims Dr. René asserts against the University itself, he asserts that the University terminated him because of his age in violation of § 623(a)(1) of the ADEA and unlawfully retaliated against him for opposing his termination, which violates of § 623(d) of the ADEA. The Defendants request dismissal of these claims, arguing that they are barred under the Eleventh Amendment concept of sovereign immunity.

Under the Eleventh Amendment, the states and their entities are immune from private damage actions or suits for injunctive relief brought in federal court. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984); *Mt. Healthy City Sch. Dist.*

*Bd. of Educ. v. Doyle*, 429 U.S. 274, 280 (1977). There is no dispute that the University is a "state" for purposes of the Eleventh Amendment. *See Kaimowitz v. Bd. of Trs. of Univ. of Ill.*, 951 F.2d 765, 767 (7th Cir. 1991). As such, the University may assert sovereign immunity as a jurisdictional bar to suit in this court and must be dismissed from this case unless there has been an unequivocal waiver of immunity by the state. *Kroll v. Bd. of Trs. of Univ. of Ill.*, 934 F.2d 904, 907 (7th Cir. 1991).

Dr. René contends that the state waived its immunity by "knowingly and intentionally subject[ing] itself to federal jurisdiction over Dr. René's ADEA claims until such time as those claims are resolved through the mainstream established by statute." (Resp. 5.) He argues that this waiver occurred when the University failed to raise its immunity defense before the EEOC, which is tantamount to affirmatively invoking federal jurisdiction. Dr. René makes no representation that the University expressly consented to being sued in federal court.

The Supreme Court recently reiterated the standards for finding waiver of Eleventh Amendment sovereign immunity. Because a waiver of such immunity is voluntary, made either by invoking federal jurisdiction or by a clear declaration, a "stringent" test is used to determine whether waiver has occurred. *Coll. Sav. Bank v. Fla. Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 627, 675-76 (1999). In *Winters v. Iowa State University*, the Seventh Circuit specifically addressed whether a state waives its sovereign immunity by participating in an EEOC proceeding initiated by a plaintiff filing a complaint with the agency. 1992 U.S. App. 11631 (7th Cir. April 24, 1992). The Circuit held that a district court properly dismissed employment

discrimination claims against a state college when the college asserted sovereign immunity because the college had not waived that immunity by entering into an EEOC settlement agreement with the plaintiff. It stated, "such action hardly constitutes the unequivocal waiver of immunity necessary to overcome an Eleventh Amendment challenge." *Id.* at *6-7 (citing *Atascadero State Hosp. v. Scanlon*, 473 U.S. 234, 238 n.1 (1985)).

The *Winters* case comports with cases from other jurisdictions that hold that a state's participation in an EEOC review process does not constitute its waiver of its Eleventh Amendment sovereign immunity. *See, e.g., McGinty v. New York,* 251 F.3d 84, 94 (2d Cir. 2001) (state's participation in EEOC proceeding does not constitute waiver of state's sovereign immunity); *Walker v. Texas,* 217 F. Supp. 2d 776, 780-81 (E.D. Tex. 2002) (work sharing agreement between a state agency and the EEOC does not constitute waiver of state's sovereign immunity). Dr. René fails to cite to any case—in this Circuit or any other—to the contrary.

Moreover, it repeatedly has been held that a state may assert Eleventh Amendment sovereign immunity at any time during the course of proceedings. *See, e.g., Calderon v. Ashmus*, 523 U.S. 740, 745 n.2 (1998) (the Eleventh Amendment is jurisdictional in that it limits a federal court's judicial power, and may be invoked at any stage of the proceedings); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 99 (1984) (same). Consequently, while the University here appeared before the EEOC, and never asserted immunity as a defense during the EEOC proceedings, it was entitled to raise it in its answer and motion for judgment on the pleadings.

In sum, Dr. René has not demonstrated that the stringent test for finding waiver of immunity has been met. Nor has he argued that the University made a clear declaration that it intended to submit to federal court jurisdiction. Therefore, his waiver argument cannot succeed and his ADEA claims against the University will be dismissed.

### III.  MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

Finally, as has been referenced throughout this Entry, the court must decide whether it should permit Dr. René to file a proposed amended complaint. Dr. René seeks to add more detailed allegations of fact in support of his first claim for First Amendment Retaliation, to withdraw his cause of action under the Equal Protection Clause of the Fourteenth Amendment, and to clarify his cause of action under the Due Process Clause of the Fourteenth Amendment. The Defendants assert that Dr. René's amendments to all but his First Amendment claim would be futile, and therefore request that the court deny the motion in all but that respect.

Once an answer to a complaint has been served, a plaintiff may amend a complaint "only by leave of court or by written consent of the adverse party." Fed. R. of Civ. Pro. 15(a). Rule 15(a) states that "leave shall be freely given when justice so requires;" but, "leave to amend is 'inappropriate where there is undue delay, bad faith, dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, or futility of the amendment.'" *Feldman v. Am. Mem. Life Ins. Co.*, 196 F.3d 783, 793 (7th Cir. 1999) (quoting *Perrian v. O'Grady*, 958 F.2d 192,

194 (7th Cir. 1992)); *see also Foman v. Davis*, 371 U.S. 178, 181 (1962). Specifically, because the court need not allow a futile amendment, *see, e.g., Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1057 n.4 (7th Cir. 1998), any palpably insufficient claim in the amended complaint will be summarily dismissed.

First, while the proposed amended complaint does not seek to amend Dr. René's age discrimination and ADEA claims in any way, it still advances them. And because the court has now ruled that those claims are insufficient as a matter of law, any continued attempt to advance those claims is futile and denied. *See Moore v. Indiana*, 999 F.2d 1125, 1128 (7th Cir. 1993) ("the court should not allow the plaintiff to amend his complaint when to do so would be futile"). With respect to Dr. René's due process claim, as the court has discussed, the proposed amendment to that claim saves it from dismissal, and therefore is not futile. Thus, the court grants Dr. René leave to file an amended complaint as to that claim.

The Defendants do not dispute that Dr. René's proposed amendment to his First Amendment retaliation claim, which adds factual allegations related to that claim, allows it to survive the motion for judgment on the pleadings, and this court agrees. Dr. René therefore is granted leave to file an amended complaint as to that claim. Finally, because Dr. René's defamation claim has survived the motion for judgment on the pleadings, he may file an amended complaint as to that claim as well.

Any amended complaint shall be filed within fourteen days of receipt of this Entry.

**IV.   CONCLUSION**

For the reasons stated above, the court **GRANTS** in part and **DENIES** in part the Motion for Judgment on the Pleadings (Docket No. 15) and **GRANTS** in part and **DENIES** in part the Motion for Leave to File Amended Complaint (Docket No. 21).

ALL OF WHICH IS ENTERED this 10th day of March 2006.

_____
John Daniel Tinder, Judge
United States District Court

Copies to:

Everett C. Hoffman
Priddy Cutler Miller & Meade PLLC
hoffman@pcmmlaw.com

Edward E. Hollis
Baker & Daniels
eehollis@bakerd.com

Herbert L. Segal
Segal Stewart Cutler Lindsay Janes & Berry PLLC
herb@segal-lawfirm.com